UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THADDEUS BOYD,

    Plaintiff,

v.                                                       Case No. 8:20-cv-2817-WFJ-SPF

SERGEANT DECKER, et al.,

    Defendants.
_____/

**ORDER**

In this action under 42 U.S.C. § 1983, *pro se* Plaintiff Thaddeus Boyd alleges that his constitutional rights were violated when he was a pretrial detainee at the Pinellas County jail. After twice screening Boyd's allegations under 28 U.S.C. § 1915(A), the Court permitted Boyd to proceed to service of process on three claims—retaliation, deliberate indifference of serious medical needs, and unconstitutional conditions of confinement—against seven Defendants. Docs. 12, 25, 26.

Before the Court are three motions: (1) a Second Motion to Dismiss filed by Defendant Sheriff Gualtieri (Doc. 50)[1]; (2) a Motion to Dismiss filed by Defendants Classification Specialists McWilliams and Paollilio, Sergeants Hastings and

---

[1] Before he was served, Sheriff Gualtieri appeared in this action and filed an initial Motion to Dismiss. Docs. 14 & 17. The Court denied the motion because dismissal with prejudice was not warranted based on the four grounds presented: failure to serve, failure to allege a physical injury, abuse of judicial process, and dismissal under *Heck v. Humphrey*, 512 U.S. 477, 487–88 (1994). Doc. 25. In his Second Motion to Dismiss, Sheriff Gualtieri now asserts that Boyd's claims are impermissible vicarious liability claims. Doc. 50.

Troutman, and Captain Moyer (Doc. 51); and (3) a Motion for Summary Judgment filed by Defendant Sergeant Petruzzi[2] (Docs. 54). Boyd responded to each motion (Docs. 55, 56, 58), and Sergeant Petruzzi replied (Doc. 59). Upon careful consideration, the Court grants each motion.

## BACKGROUND

The Court's prior order screening the Second Amended Complaint under § 1915(A) recites the facts alleged by Boyd. Doc. 25 at 3−6. That recitation of facts is adopted and incorporated by reference in this Order. Generally, Boyd alleges that jail officials retaliated against him for filing grievances by extending the duration of his administrative confinement. *See* Doc. 12 at 8−12. He further alleges that jail officials were deliberately indifferent to his serious medical needs and subjected him to unconstitutional conditions of confinement by forcing him to remain in administrative confinement for extended periods despite his repeated complaints. *See id.*

## STANDARDS OF REVIEW

**I.    Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" is subject to dismissal. In assessing a Rule 12(b)(6) motion, a court must accept a complaint's allegations as true and view them in a light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003);

---

[2] Boyd misspells Sergeant Petruzzi's surname as "Patruzi" in the Second Amended Complaint.

*Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A *pro se* plaintiff's complaint is entitled to a generous interpretation. *Haines v. Kerner*, 404 U.S. 519 (1972).

To withstand a motion to dismiss, the complaint must state a claim to relief that is plausible on its face; that is, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Further, under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If the court cannot "infer more than the mere possibility of misconduct," the complaint does not show entitlement to relief. *Iqbal*, 556 U.S. at 679. In reviewing a motion to dismiss, a court considers the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

II. **Summary Judgment**

Pursuant to Rule 56, "[t]he court shall grant summary judgment if the movant

3

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the burden of demonstrating a lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine dispute of material fact exists, a court must view the evidence and draw all factual inferences in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Additionally, any reasonable doubts must be resolved in the non-moving party's favor. *Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### I. Second Motion to Dismiss by Sheriff Gualtieri

In his Second Amended Complaint, Boyd sues Sheriff Gualtieri in his official capacity under § 1983. Doc. 12 at 5. Sheriff Gualtieri moves to dismiss Boyd's claims, arguing that they constitute impermissible vicarious liability claims. Doc. 50.

Specifically, Sheriff Gualtieri asserts that the Second Amended Complaint lacks any factual allegations concerning his policies, practices, customs, training, supervision, discipline, or hiring that caused Boyd's alleged injuries. *Id.* at 5–6.

In response, Boyd does not rebut the assertion that his claims are impermissible vicarious liability claims. Doc. 55. Rather, he repeats and expands the factual allegations of his Second Amended Complaint. He argues that Sheriff Gualtieri is liable "as chief arbitrator over the Pinellas County Sheriff and author of the inmate handbook." *Id.* at 3. Without elaboration, Boyd avers that Sheriff Gualtieri "communicated all orders to the detention deputies" and therefore instructed Captain Moyer to prohibit him from receiving ADA-compliant housing. *Id.* at 3.

As an initial matter, Boyd cannot survive a motion to dismiss with expanded factual allegations raised for the first time in his responsive memorandum. *See Regalado v. Dir., Ctr. for Disease Control*, No. 22-12265, 2023 WL 239989, at * 1 (11th Cir. Jan. 18, 2023) (affirming dismissal of § 1983 complaint as moot where plaintiff's jurisdictional claims "were never properly before the district court as he only raised them in opposition to the motion to dismiss and did not seek leave to amend his complaint"); *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to a motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."). Boyd does not seek leave to amend. Accordingly,

5

the operative factual allegations are those alleged in Boyd's Second Amended Complaint.

The Eleventh Circuit has explained that it "is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior." *Nunnelee v. Morgan*, 550 F. App'x 716, 718 (11th Cir. 2013) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). To hold a sheriff liable in his official capacity under § 1983, the sheriff "must have either participated in the constitutional deprivation, or taken actions linked to the deprivation through causal connection." *Id.* A causal connection is established when a sheriff fails to correct constitutional deprivations despite being on notice of a "history of abuse," when "improper custom or policy breed indifference to constitutional rights," or when a sheriff "directed the subordinates to act unlawfully or knew the that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citations and internal quotes omitted).

Here, Boyd's Second Amended Complaint fails to allege any direct participation by Sheriff Gualtieri in the alleged constitutional deprivations. *See* Doc. 12. The only factual allegation concerning Sheriff Gualtieri is Boyd's contention that he sent Sheriff Gualtieri three letters. *Id.* at 10, 15. In addition to failing to show Sheriff Gualtieri's direct participation in the alleged constitutional deprivations, Boyd fails to show any causal connection otherwise linking Sheriff Gualtieri to those alleged deprivations. He identifies no history of abuse of which Sheriff Gualtieri knew but chose not to correct. Nor does he identify any custom or policy suggesting an indifference to constitutional rights. The Second Amended Complaint also contains

6

no allegations of Sheriff Gualtieri directing his subordinates to act unlawfully or failing to stop them from acting unlawfully. There are ultimately no allegations establishing that Sheriff Gualtieri "knew of any allegedly improper conduct at all, much less that he knew [they were] unconstitutional and still explicitly or tacitly condoned [them]." *Nunnelee*, 550 App'x at 718.

In its prior order dismissing Boyd's Amended Complaint, the Court informed Boyd of the insufficiency of his claims against Sheriff Gualtieri and afforded him another chance to amend. Doc. 11 at 6–7. Because Boyd has again failed to allege any direct participation by Sheriff Gualtieri or any causal connection linking him to the alleged constitutional violations, Boyd's § 1983 claims against Sheriff Gualtieri in his official capacity are due to be dismissed with prejudice.

## II. Motion to Dismiss by Defendants McWilliams, Paollilio, Troutman, Hastings, and Moyer

Classification Specialists McWilliams and Paollilio, Sergeants Troutman and Hastings, and Captain Moyer also move for dismissal of the Second Amended Complaint, arguing that they are entitled to qualified immunity for the claims asserted against them in their individual capacities.[3] Doc. 51. "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation. A district court should therefore grant the defense of qualified immunity on a motion to dismiss

---

[3] Additionally, these Defendants argue that the Second Amended Complaint constitutes an impermissible shotgun pleading. Doc. 51 at 8–9. The Court declines to dismiss on this basis because the pleading is entitled to a generous interpretation and does not fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

if the complaint fails to allege the violation of a clearly established constitutional right." *Dalrymple v. Reno*, 334 F.3d 991, 994–95 (11th Cir. 2003) (citations omitted).

To overcome a qualified immunity defense, a plaintiff must show that the defendant violated a constitutional right and that the violated right was clearly established. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2015). The Eleventh Circuit has explained:

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Pullen v. Osceola Cnty.*, 861 F. App'x 284, 290 (11th Cir. 2021) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

The Court considers the qualified immunity defenses of Classification Specialists McWilliams and Paollilio, Sergeants Troutman and Hastings, and Captain Moyer in turn.

### A. Classification Specialists McWilliams and Paollilio

In his Second Amended Complaint, Boyd alleges that he was "sped through booking" and placed in disciplinary confinement due to his prior "red dot status"[4] while incarcerated on different charges in 2007. Doc. 12 at 9. Boyd states that he

---

[4] Red dot status is reserved for inmates with "disciplinary problems" who require placement in "close custody." *See* Doc. 1 at 2; Doc. 6 at 26. Inmates in close custody are housed in "secure cells" due to a "demonstrated [] inability to live in the general population without abusing the rights and privileges of others." OFF. OF PROGRAM POLICY ANALYSIS & GOV'T ACCOUNTABILITY, FLA. CORR. FACILITIES, Rep. No. 19-08, at 43 (2019).

"went back and forth with" Classification Specialists McWilliams and Paollilio about his placement in disciplinary confinement "for an entire year," but his concerns were "ignored." *Id.* While Boyd admits that his classification status "has since dropped from red dot to maximum and now medium," he states that he is "still housed in max." *Id*. He also claims that he is "still called a 'predator'" despite not having received any "sex charges." *Id.* Based on these allegations, Boyd accuses Classification Specialists McWilliams and Paollilio of "classification negligence." *Id.*

Classification Specialists McWilliams and Paollilio contend that they are entitled to qualified immunity because no clearly established constitutional right guarantees a detainee's classification status. Doc. 51 at 5–6. In response, Boyd does not refute their qualified immunity defense. Doc. 56 at 2–3. Instead, Boyd repeats that he was improperly classified and placed in disciplinary confinement because of "classification negligence." *Id*. at 2.

Accepting the factual allegations in the Second Amended Complaint as true, Classification Specialists McWilliams and Paollilio have established their entitlement to qualified immunity. Boyd has failed to allege that the two Classification Specialists violated any clearly established right, as there "is no constitutionally protected liberty interest in being classified at a certain security level[.]" *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (citing *Moody v. Daggett*, 429 US. 78, 88 n.9 (1976) (ruling that prison officials have full discretion regarding prisoner classification)); *Riddle v. Ala. Dep't of Corrs.*, No. 21-0343-JB-N, 2022 WL 1316562, at *3 (S.D. Ala. May 3, 2022) (dismissing with prejudice claims against classification specialists regarding an

9

inmate's classification hearing because no constitutional right was implicated). Moreover, to the extent that Boyd bases his claims on "classification negligence," negligence is not actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that more than mere negligence is required to support a constitutional claim). Classification Specialists McWilliams and Paollilio are therefore entitled to qualified immunity, and Boyd's claims against them must be dismissed with prejudice.

### B.   Sergeants Troutman and Hastings

In his Second Amended Complaint, Boyd alleges that Sergeants Troutman and Hastings "became involved" with a disciplinary report that Boyd received following an incident with another inmate. Doc. 12 at 10. After a disciplinary hearing regarding the incident, Boyd was given "5 days confinement." *Id*. Boyd states that he wanted to press charges against the other inmate and "wrote multiple complaints." *Id*. According to Boyd, "Sgt. Hastings claimed Sgt. Troutman would handle [Boyd's] case." *Id*. Sergeant Troutman allegedly visited Boyd and gave him a "victim's rights card" but "filed no [] action." *Id*. Boyd says he "was forced to remain on red dot for 6 months" and "remained on administrative confinement for 8 months." *Id*.

Sergeants Hastings and Troutman assert that they are entitled to qualified immunity because the failure to take corrective action on a detainee's grievance does not amount to a violation of due process. Doc. 51 at 6–7. In response, Boyd again neglects to rebut the qualified immunity defense and repeats his initial allegations. Doc. 56 at 3–4.

Accepting the factual allegations in the Second Amended Complaint as true, Sergeants Hastings and Troutman are entitled to qualified immunity. Boyd has not alleged the violation of a clearly established constitutional right based on Sergeants Hastings and Troutman's supposedly inadequate response to Boyd's complaints surrounding the aforementioned incident. As this Court previously informed Boyd, a jail official's failure to process a grievance, without more is not actionable under § 1983. *See* Doc. 11 at 13. "[A] prisoner does not have a constitutionally-protected liberty interest is in an inmate grievance procedure." *Thomas v. Warner*, 237 F. App'x 435, 437–38 (11th Cir. 2007); *see also Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011). Thus, Boyd's claims against Sergeants Hastings and Troutman must be dismissed with prejudice.

### C. Captain Moyer

In his Second Amended Complaint, Boyd alleges that Captain Moyer "responded to two of [his] letters to Judge[5] and [s]he was aware of the claims of various accusations that [Boyd] alleged, yet . . . [s]he was insolent and negligent and a little insulting." Doc. 12 at 11. He further alleges that Captain Moyer "continued to taunt [him] every time restrictions were lifted by intentionally calling [Boyd] a 'predator.'"

---

[5] The Second Amended Complaint fails to identify the "Judge" to whom Boyd allegedly sent letters. Perhaps Boyd used the term "Judge" in error, as Boyd now states that he "never made claims that [Captain Moyer] 'responded to two of my letters to Judge.'" Doc. 56 at 5. Instead, he explains that Captain Moyer "responded to [his] letters to her boss[,] Mr. Sheriff Bob Gualtieri." *Id.*

*Id.* He describes Captain Moyer's conduct as "defamation of character and malicious negligen[ce]." *Id.*

Captain Moyer avers that she is entitled to qualified immunity because Boyd has not alleged that she was personally involved in any constitutional violation. Doc. 51 at 7–8. In response, Boyd attempts to clarify and expand his factual allegations. Doc. 56 at 5. He asserts that "Captain Moyer made the final confirmation call under her boss Bob Gualtieri" and "was the last shot caller that [he] could plea with before [he] could communicate [his] grievances to Sheriff Gualtieri." *Id.* As the Court has already explained, Boyd cannot survive a motion to dismiss with expanded factual allegations in his responsive memorandum.

Accepting the factual allegations contained in the Second Amended Complaint as true, Captain Moyer is entitled to qualified immunity. Boyd fails to show that Captain Moyer violated a clearly established constitutional right by responding to two of his letters, exhibiting an insulting attitude, or calling him a predator. To be sure, Boyd neglects to explain *how* Captain Moyer's response to his letters violated a clearly established constitutional right; he simply states that she "responded" to his letters. *See* Doc. 12 at 11. And, as the Court previously explained, taunting and name-calling does not rise to the level of a constitutional violation. Doc. 25 at 1415; *see Hernandez v. Fla. Dep't of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that "verbal abuse alone is insufficient to state a constitutional claim"). Accordingly, Captain Moyer is entitled to qualified immunity, and Boyd's claims against her must be dismissed with prejudice.

### III.    Motion for Summary Judgment by Sergeant Petruzzi

Finally, the Court turns to Sergeant Petruzzi's Motion for Summary Judgment. Docs. 54. In denying any connection to Boyd, Sergeant Petruzzi notes that he retired from the Pinellas County Sheriff's Office in March 2017—over three years before Boyd entered the jail. Sergeant Petruzzi sttaes that he "did not see the plaintiff, have any conversation or other communication with or concerning the plaintiff, or have any involvement in any way with the plaintiff's red dot status or the disciplinary report he complains about in the second amended complaint." Doc. 53-2 at 2. He also contends that "[n]either [his] name nor [his] unique payroll number are present in any reports concerning the plaintiff after [his] retirement date." *Id.* The affidavit of Kristine Pelella, Human Resources Analyst for the Pinellas County Sheriff's Office, confirms that Sergeant Petruzzi retired in March 2017. Doc. 53-1 at 2.

In response, Boyd admits that he incorrectly named Sergeant Petruzzi as a defendant in this action and does not dispute that Sergeant Petruzzi is entitled to summary judgment. Doc. 58 at 1–2. Boyd explains that he confused Sergeant Petruzzi with non-party Sergeant Guzman because the two individuals held the same positions at the jail. *Id.* Given that it is undisputed that Sergeant Petruzzi was incorrectly named as a defendant in this action and had no involvement in the constitutional violations that Boyd alleges, Sergeant Petruzzi is entitled to summary judgment on Boyd's claims against him.[6]

---

[6] Boyd has not sought leave to add Sergeant Guzman as a defendant. Nevertheless, such leave is not warranted. Though Sergeant Guzman's name is absent from the Second

# CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

(1) The Second Motion to Dismiss filed by Sheriff Gualtieri (Doc. 50) and the Motion to Dismiss filed by Classification Specialists McWilliams and Paollilio, Sergeants Troutman and Hastings, and Captain Moyer (Doc. 51) are **GRANTED**. The Second Amended Complaint (Doc. 12) is **DISMISSED WITH PREJUDICE**.

(2) The Motion for Summary Judgment filed by Sergeant Petruzzi (Doc. 54) is **GRANTED**.

(3) The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff and close this case.

**DONE AND ORDERED** at Tampa, Florida, on May 2, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Plaintiff, *pro se*
Counsel of Record

---

Amended Complaint, Boyd mentioned Sergeant Guzman in both his original Complaint (Doc. 1 at 3) and Amended Complaint (Doc. 6 at 9). In his Amended Complaint, Boyd vaguely described Sergeant Guzman's alleged involvement in the loss of Boyd's personal property. Doc. 6 at 9. In dismissing that pleading, the Court explained that any attempt by Boyd to amend his "loss of personal property" § 1983 claim would be futile because Boyd has an adequate, post-deprivation remedy under state law (i.e., conversion). Doc. 25 at 13–14.